

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00147-CR

THE STATE OF TEXAS, APPELLANT

V.

GERALD BARROW, APPELLEE

On Appeal from the County Court
Hale County, Texas
Trial Court No. 2012C-427, Honorable Bill Coleman, Presiding

July 16, 2014

## CONCURRING OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This appeal causes me to recall the old adage admonishing one to be careful about what he asks since he may just get it. Gerald Barrow was charged with class A misdemeanor assault involving family violence. That he assaulted the complaining witness (*i.e.,* his live-in girlfriend whom he later married by the time of trial) is unquestioned. That a jury heard evidence about his claim of self-defense is unquestioned. That the jury was charged on self-defense is unquestioned, and that the jury rejected that claim is unquestioned. And, though his sentence could have included

incarceration, he simply received a fine. Yet, Barrow wanted a new trial because he thought his defense counsel should have bolstered the claims of self-defense by tendering evidence of his future wife's prior convictions for assault. These prior convictions were allegedly unknown to trial counsel, though Barrow knew of them and was capable of disclosing them to his legal representative had he cared to.[1] Again, one should be careful for what he asks.

As explained in the well-written opinions of both Justices Campbell and Pirtle, the trial court agreed with Barrow and granted his motion for new trial on two grounds. While granting a new trial does occur, I must admit that it is more the exception than the rule. And, being the exception, it creates the predicament faced by this court . . . how do we review a decision when it is based upon a legal theory that must be "firmly founded" on the factual record and the factual record is rather undeveloped. The legal theory in question is that arising from the Sixth Amendment of the United States Constitution and affording an accused the right to effective assistance of counsel.

I cannot dispute that a trial court has the ability to grant new trials. *See* TEX. R. APP. P. 21.9 (stating that a trial court must grant a new trial "when it has found a meritorious ground for new trial"). And as both the opinions of Justice Campbell and Justice Pirtle explain, whether to grant such relief lies within the trial court's discretion. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014) (stating that the standard of review is one of abused discretion). As they also noted, that discretion is not unfettered. *Id.* at 105. It does not allow the court to grant a new trial based on sympathy, hunch, personal notions of right and wrong, or the like. *Id* at 104*.* Rather,

---

[1] In truth, the extent of what counsel actually knew or not is itself a game of conjecture since he did not testify at the new trial hearing.

2

the decision must be based upon a valid legal theory, and the defendant must show that he is entitled to a new trial *under the law*. *Id.* at 104-105; *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007) (stating that though "[w]e need not today set out bright-line rules concerning appellate review of a trial court's discretion in this area. . . we do conclude that a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure").

To reiterate, the legal theory at issue here is the right to effective assistance of counsel.[2]  A defendant is denied that right when it is shown that his counsel's performance was deficient and that the deficiency prejudiced the defendant.  *Nava v. State*, 415 S.W.3d 289, 307-308 (Tex. Crim. App. 2013).  And, while one would think that the right would serve only to protect the defendant, it appears that our Court of Criminal Appeals has expanded it, somewhat, to protect the interests of counsel as well. Whether this expansion was intentional or not is unimportant.  It, nonetheless, has been expanded as evinced by verbiage in opinions like *Nava* and *Menefield v. State*, 363 S.W.3d 591 (Tex. Crim. App. 2012).  The pertinent language tells us that "[i]f trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the . . . conduct [is] 'so outrageous that no competent attorney would have engaged in it,'" *Nava v. State*, 415 S.W.3d at 308,

---

[2] I recognize that the trial court also indicated that it granted new trial on the basis of newly discovered evidence.  While a new trial may be granted on that basis, *see Keeter v. State,* 74 S.W.3d 31, 36 (Tex. Crim. App.2002), evidence is not new if it was known to the defendant.  *Drew v. State*, 743 S.W.2d 207, 227 n. 14 (Tex. Crim. App.1987).  And, the record here illustrates that the supposedly new evidence, *i.e.*, the complaining witness' prior convictions for assault, was known to Barrow.

*quoting*, *Menefield v. State, supra*, and "[t]rial counsel 'should ordinarily be afforded an opportunity to explain his actions before being *denounced* as ineffective.'" *Menefield v. State*, 363 S.W.3d at 593 (emphasis added); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). If the Court of Criminal Appeals did not care to assure that trial counsel be afforded some protection, it would not matter whether trial counsel was accorded opportunity to explain himself before being "denounced." But, he is to be accorded that opportunity, and it must not be denied him unless his conduct is sufficiently outrageous as to be of the ilk that no competent attorney would have done it.

Here, trial counsel was denounced as incompetent without being afforded the privilege to explain himself. It may well be that other evidence could have bolstered Barrow's claim of self-defense. But, defense counsel was not given the chance to explain why it was not used. It may be that he had no reason. It may be that he did. But it cannot be disputed that he was afforded no chance to reveal either.

Nor can it be said that the defense was ignored in its entirety. Again, Barrow's wife testified about her effort to assault Barrow, which purportedly included the use of a knife. So too did the trial court incorporate the defense into its jury charge. And, though appellant was found guilty, his punishment was rather lenient for someone who struck his live-in girlfriend at the time. From these circumstances one could deduce that the jury may well have taken into consideration the victim's role in the incident.

Whether the particularly old admonishment may have played a role in defense counsel's strategy is also unknown. The rule of civil decorum about which I refer relates to boys hitting girls. Few males, and females for that matter, can legitimately deny having been taught or having heard the directive that "boys don't hit girls" even if

provoked. Its potential influence upon a juror's mindset or viewpoint cannot be discounted, and that may well be a factor weighed by an astute trial attorney when selecting a trial strategy. To this I also add the realization that Barrow married the woman whom he wanted others to believe was so dangerous as to cause him to fear for his well-being. Indeed, he married her *after* the assault and despite knowing her supposedly violent tendencies. How that would play with a jury (and its potential impact on the credibility of Barrow) could have also influenced trial counsel's judgment.

I cannot say that any of the forgoing circumstances played any role in defense counsel's strategies or actions. I can only say that they prevent me from deeming a possible hesitance to further color Barrow's wife as a bad or violent person through the use of prior convictions as conduct that no reasonably competent attorney would pursue. Thus, per *Nava* and *Menefield,* defense counsel was entitled to appear and explain himself before the trial court was authorized to "denounce" him as incompetent by granting a new trial.

Simply put, the trial court's decision was not based on a valid legal theory. This is so because it did not abide by the law and procedure applicable to establishing claims of ineffective assistance. Thus, I too conclude that it abused its discretion in granting new trial and vote to reverse the order doing same.


Brian Quinn
Chief Justice


Do not publish.

5